**In re Byron C. LEWIS;  Irene Lewis, Debtors.**

**Byron C. LEWIS;  Irene Lewis, Appellants,**

v.

**Mitchell R. SCOTT, Appellee.**

No. 94–15516.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 16, 1996.*

Decided Oct. 2, 1996.

---

* The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34– 4 and Fed.R.App.P. 34(a).

Craig S. Trenton, Salt Lake City, UT, for appellants.

Dennis J. Clancy, Raven, Kirschner & Norell, Tucson, AZ, for appellee.

Before: SNEED, JOHN T. NOONAN, Jr., and THOMPSON, Circuit Judges.

SNEED, Circuit Judge:

Debtors Byron C. and Irene Lewis appeal the bankruptcy appellate panel's order affirming the bankruptcy court's decision that the Lewises' debt to Mitchell R. Scott was nondischargeable under 11 U.S.C. § 523. The Lewises argue that their debt to Scott was dischargeable because they were not fiduciaries to Scott under Arizona law, and because they did not commit defalcation. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm.

## I.

### BACKGROUND

On November 20, 1989, Byron and Irene Lewis signed a partnership agreement with Mitchell Scott to sell Indian arts and crafts under the name L & S Traders. The partnership sold goods out of two stores—a Winslow, Arizona, store which the Lewises opened in October 1989, and a Bisbee, Arizona, store which they had opened in 1987 prior to teaming up with Scott. Under the terms of the agreement, Scott invested $28,-000 in the Winslow store and $5,000 in the Bisbee store. The Lewises, in turn, were to contribute their time and labor in managing the two stores. According to Scott, the partners agreed to share in half the profits.

The partnership agreement also provided that the L & S bookkeeper would provide monthly financial reports to the partners. Although the agreement identified Neil Ranstrom as the bookkeeper, the parties agree that Irene Lewis in fact filled that role. Scott, however, received no reports during the months that L & S Traders was in business. Nor did he receive an accounting for either his $5,000 investment in the Bisbee store or for the Lewises' investment of time and labor. The Lewises kept no itemized records of daily expenditures for either store

and did not track the stores' merchandise. They commingled Scott's investment in L & S Traders with funds for their separate enterprise, True Grit.

The L & S venture was not successful. The Winslow and Bisbee stores shut their doors in, respectively, May and August 1990, and the Lewises filed for bankruptcy on November 28, 1989. Scott subsequently filed a complaint to determine the dischargeability of the L & S debt. The bankruptcy court granted summary judgment to Scott, and the Bankruptcy Appellate Panel ("BAP") for the Ninth Circuit affirmed. The Lewises timely appealed.

## II.

### DISCUSSION

■ We review decisions of the BAP de novo, applying the same standard of review as did the BAP to the underlying judgment of the bankruptcy court. *In re Johnston,* 21 F.3d 323, 326 (9th Cir.1994). Thus, we review the grant of summary judgment de novo, making all reasonable inferences in favor of the Lewises to determine whether there exists any genuine issue of material fact precluding judgment in Scott's favor as a matter of law. *Id.; In re Yarbrow,* 150 B.R. 233, 236 (9th Cir. BAP 1993).

### A. *The Lewises Were Fiduciaries Under Section 523*

#### 1. *The Section 523 Standard.*

■ With certain enumerated exceptions, "[t]he effect of a discharge in bankruptcy is to release a bankrupt from all of his provable debts." *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 331, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934) (internal quotations omitted). The exceptions to dischargeability are listed in 11 U.S.C. § 523, and include "any debt ... for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4); *In re Short,* 818 F.2d 693, 694 (9th Cir.1987).

■ Whether a relationship is a "fiduciary" one within the meaning of section 523(a)(4) is a question of federal law. *Ragsdale v. Haller,* 780 F.2d 794, 795 (9th Cir.

1986). The broad, general definition of "fiduciary" is inapplicable in the dischargeability context. *Id.* at 796. Instead, the fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt. *Id.* In other words,

> It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio.* He must have been a trustee before the wrong and without reference thereto.

*Davis,* 293 U.S. at 333, 55 S.Ct. at 154. Whether a fiduciary is a "trustee in that strict and narrow sense," *id.,* is determined in part by reference to state law. *Ragsdale,* 780 F.2d at.796.

The question to be decided, therefore, is whether under Arizona law, a partnership embodies an "express" or "technical" trust relationship, rather than a trust *ex maleficio,* within the meaning of section 523(a)(4). The question is one of first impression, as neither the Arizona courts nor the courts of this circuit have faced the issue.

#### 2. *Partners Are Trustees Under Arizona Law.*

Scott argues that Arizona statutory law defining the relations among partners imposes the type of express trust relationship required by section 523(a)(4). According to A.R.S. § 29–221(A):

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

In *Ragsdale,* this court examined an identical California statute, Cal.Corp.Code § 15021(1), and held that

> under this statute, the trust arises only when the partner derives profits without consent of the partnership; it is the sort of trust *ex maleficio* not included within the purview of § 523(a)(4).

*Ragsdale,* 780 F.2d at 796. That decision precludes us from holding that Arizona's

identical statute does impose an express trust relationship on partners.

The *Ragsdale* court, however, proceeded to examine California case law, and determined that "California has made all partners trustees over the assets of the partnership. Accordingly, we hold that California partners are fiduciaries within the meaning of § 523(a)(4)." *Id.* at 796–97 (footnotes omitted). The court found this heightened duty in the following language:

> "Partners are trustees for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his co-partner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind."

*Id.* at 796 (quoting *Leff v. Gunter*, 33 Cal.3d 508, 189 Cal.Rptr. 377, 658 P.2d 740, 744 (1983)).[1]

■ Arizona case law employs similar language in describing the duties owed between partners. For instance, the Arizona Supreme Court has stated:

> "The relation of partnership is fiduciary in character, and imposes upon the members of the firm the obligation of the utmost good faith in their dealings with one another with respect to partnership affairs, of acting for the common benefit of all the partners in all transactions relating to the firm business, and of refraining from taking any advantage of one another by the slightest misrepresentation, concealment, threat or adverse pressure of any kind."

*DeSantis v. Dixon*, 72 Ariz. 345, 236 P.2d 38, 41 (1951) (quoting 68 C.J.S., Partnership, § 76). *See also Jerman v. O'Leary*, 145 Ariz. 397, 701 P.2d 1205, 1210 (App.1985) (noting that "the relation of partners is such that in a sale of an interest in the partnership by one partner to another, the utmost good faith must be observed, and the concealment of any important fact or the failure to fully disclose all knowledge affecting the value of the partnership, or the interest proposed to be sold, or any fraud of any kind, would operate to defeat the sale"); *Carrasco v. Carrasco*, 4 Ariz.App. 580, 422 P.2d 411, 413 (1967) (observing "that a managing partner is charged with making a true accounting, [and] that his position is similar to a trustee's"). In light of this language, we hold that Arizona law imposes upon partners a fiduciary duty within the meaning of section 523(a)(4).[2]

### B. The Lewises Committed Defalcation

■ Defalcation is defined as the "misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds." *Black's Law Dictionary* 417 (6th ed. 1990). Under section 523(a)(4), defalcation "includes the innocent default of a fiduciary who fails to account fully for money received." *In re Short*, 818 F.2d at 694 (citation omitted); *In re Baird*, 114 B.R. 198, 204 (9th Cir. BAP 1990) ("In the context of section 523(a)(4), the term 'defalcation' includes innocent, as well as intentional or negligent defaults so as to reach the conduct of all fiduciaries who were short in their accounts"). To the extent *In re Martin*, 161 B.R. 672, 678 (9th Cir. BAP 1993), conflicts with this standard, it is

---

1. *See also* 3 *Collier on Bankruptcy* § 523.14 n. 8 (15th ed. 1996) ("If state law clearly and expressly imposes trust obligations on managing partners of limited partnerships substantially similar to those imposed on trustees, i.e., the duty of loyalty and the duty to deal with one another in good faith and with honesty, these fiduciary obligations meet the strict requirements of section 523(a)(4)").

2. Other states with partnership statutes identical to A.R.S. § 29–221 and Cal.Corp.Code § 15021(1) have reached the same conclusion. *See Matter of Bennett*, 989 F.2d 779, 787 (5th Cir.1993) (under Texas law, "[a general partner's] conduct must be measured by standards exacting the utmost fidelity.... Not only is it

[the general partner's] duty to administer the partnership affairs solely for the benefit of the partnership, he is not permitted to place himself in a position where it would be for his own benefit to violate this duty") (internal quotations omitted), *as amended*, 1993 WL 268299 (No. 91–1059) (5th Cir. July 15, 1993), *cert. denied by Bennett v. LSP Inv. Partnership*, 510 U.S. 1011, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993); *In re Short*, 818 F.2d at 695 (under Washington law, "partners are required to exercise the utmost good faith toward each other, and, where an accounting is had, it is the duty of a partner who manages, conducts, or operates a partnership business, to render complete and accurate accounts of all of the partnership business") (internal quotations omitted).

overruled.[3]  An individual may be liable for defalcation without having the intent to defraud.

Scott submitted evidence supporting his allegations that the Lewises failed to provide a complete accounting of the funds he invested in the partnership, or of the partnerships assets generally, and commingled his investment with their other funds.  That default meets the legal definition of defalcation.  To survive summary judgment, therefore, the Lewises were obliged to produce some "significant probative evidence" tending to refute Scott's evidence.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Their conclusory arguments unsupported by factual statements or evidence do not meet this burden.  *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").  Therefore, Scott was entitled to judgment as a matter of law.

The judgment is affirmed.

---

**3.** *In re Martin* held as follows: "We … hold that the mere failure to use ordinary care in accounting for an asset does not per se constitute 'defalcation' within the context of § 523(a)(4).  There simply must be a showing of some element of bad faith or reprehensible conduct for nondischargeability under § 523(a)(4)."