**In re Samuel STANIFER, Debtor.**

**Helen Lovell, Appellant,**

**v.**

**Samuel Stanifer, Appellee.**

**BAP No. CC–98–1692–RiPK.**

**Bankruptcy No. ND 98–11083–RR.**

**Adversary No. ND 98–01081–RR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 17, 1999.

Decided July 13, 1999.

Andrew Wolf, Ventura, CA, for Helen Lovell.

Before: RIEGLE,[1] PERRIS, and KLEIN, Bankruptcy Judges.

## OPINION

RIEGLE, Bankruptcy Judge.

### OVERVIEW

A debtor's former wife brought an adversary proceeding to except from discharge a debt owed to her which arose from the debtor's failure to pay her a portion of his pension benefits. The bankruptcy court held that the portion of the debt arising from benefits that the debtor received before the state court divided the pension benefits between the debtor and his former spouse was not excepted from

1. The Honorable Linda B. Riegle, Chief Bankruptcy Judge for the District of Nevada, sitting by designation.

discharge under either 11 U.S.C. § 523(a)(4) or (a)(15).[2]

We conclude that under the analysis of *In re Lewis,* 97 F.3d 1182 (9th Cir.1996) and *Ragsdale v. Haller,* 780 F.2d 794 (9th Cir.1986), the debtor had a fiduciary duty to his former spouse within the meaning of § 523(a)(4) with regard to community property. We REVERSE the portion of the bankruptcy court's order that held that the debt for benefits received before the state court division of community property is dischargeable under § 523(a)(4).

## FACTS AND PROCEEDINGS BELOW

Helen Lovell and the debtor, Samuel Stanifer, were divorced on March 12, 1981. During their marriage, Samuel accrued retirement benefits. Samuel and Helen entered into a stipulation at the time of their divorce which was approved by the state court on May 4, 1981. Pursuant to the stipulation, jurisdiction was expressly reserved over Samuel's employment benefit plans. Samuel's retirement benefits were not divided at the time of the divorce.

Samuel retired in September 1994. Shortly thereafter, without notice to Helen, Samuel received a lump sum distribution from his pension in the amount of $5,000 in cash and $50–55,000 as a rollover into an IRA. He also began receiving a monthly pension benefit. Samuel did not pay any of the lump sum distribution to Helen.

On November 13, 1995, by a "Stipulation and Order on Order to Show Cause" ("1995 Order"), Helen's percentage interest in Samuel's retirement benefits was determined to be 24.54%. The 1995 Order stated that:

> [Samuel] shall pay to [Helen] 24.54% of the pension benefits he currently receives from CSRS and $10.00 per month towards accrued arrearages until further order commencing October 1, 1995. The

court shall retain jurisdiction over the issue of the amount of the accrued arrearage, if any … Payments to [Helen] represent her community property share of [Samuel's] employment benefit plan(s).

Samuel did not begin to pay Helen her portion of the monthly pension benefit until March 1998, more than two years after the 1995 Order. Samuel filed a Chapter 7 petition in March 1998.

On April 20, 1998, Helen filed a complaint under § 523(a)(4) and § 523(a)(15). She alleged in her complaint that Samuel had "engaged in the theft and/or embezzled" her interest in the pension under § 523(a)(4). She also alleged that Samuel was a constructive trustee.

After a trial the bankruptcy court issued its written "Findings of Fact, Conclusions of Law and Order" ("Findings and Conclusions"). The court found that Samuel did not embezzle the lump sum distribution, the IRA rollover, or the monthly pension payments which he received prior to the 1995 Order. The court reasoned that the relative ownership interests of Helen and Samuel "changed over time" and that until the pension was divided by the state court it was community property, subject to the control of either spouse pursuant to CAL. FAM. CODE § 1100(a). When Samuel received the lump sum distribution, the IRA rollover, and the monthly payments prior to the 1995 Order, the court held, "he took control of community property over which he had unfettered management and control. He was incapable of embezzling that property."

As to the monthly pension benefit that Samuel received after the 1995 Order, the court excepted Helen's share from discharge. The court stated that:

> After the 1995 Order, of which [Samuel] was aware in August of that year, the 24.54% of the pension became the sepa-

---

**2.** Unless otherwise indicated, all references to Chapters, Sections and Rules are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.,* and to the Federal Rules of Bankruptcy Procedure, Rules 1001, *et seq.*

rate property of [Helen]. [Samuel] did fraudulently appropriate [Helen's] 24.54% of the monthly pension benefit from October 1, 1995 through February, 1998.

In its Findings and Conclusions the court noted that the state court did not restrain either party from "transferring, selling, encumbering, or disposing the community property" in the 1981 judgment of dissolution. The court found this omission "significant."

As to the § 523(a)(15) claim the bankruptcy court ruled that Samuel had no ability to pay Helen her portion of the pension benefits. The court also ruled that there was no evidence in the record that Samuel had the ability to obtain employment. The court therefore concluded that the debt was not excepted from discharge under § 523(a)(15).

■ Helen now appeals the bankruptcy court's ruling that the debt for benefits received before the 1995 Order is dischargeable, arguing that Samuel was a fiduciary prior to the 1995 Order and that therefore the debt related to Helen's share of those funds should be excepted from discharge. Helen additionally contends that the bankruptcy court erred in determining that Samuel's debt was not excepted from discharge under § 523(a)(15) and in failing to find that Samuel voluntarily disabled himself from employment to avoid paying her. Samuel did not file a brief.[3]

## ISSUES

1) Whether the bankruptcy court erred in determining that the debt for Helen's portion of the benefits received by Samuel prior to the 1995 Order was not excepted from discharge under § 523(a)(4).

2) Whether the bankruptcy court erred in determining that the debt to Helen was not excepted from discharge under § 523(a)(15).

## STANDARD OF REVIEW

■ A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *In re Niles*, 106 F.3d 1456, 1459 (9th Cir. 1997). Clear error exits when, after examining the evidence, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Montross*, 209 B.R. 943, 947 (9th Cir. BAP 1997). The existence of a fiduciary relationship for purposes of § 523(a)(4) is a question of law which is reviewed de novo. *Ragsdale v. Haller*, 780 F.2d at 795.

## DISCUSSION

### I. § 523(a)(4).

Section 523(a)(4) prevents the discharge of a debt incurred by fraud or defalcation while acting in a fiduciary capacity. In order to prevail under this exception to discharge, Helen had to prove, by a preponderance of the evidence, that: (1) Samuel was acting in a fiduciary capacity; and (2) while acting in that capacity, he engaged in fraud or defalcation.

### A. Fiduciary Capacity.

■ The meaning of "fiduciary capacity" under § 523(a)(4) is narrowly construed to apply only to relationships involving express or technical trust relationships, and not trusts that are imposed by law as a remedy. *See, e.g., Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934);[4] *Ragsdale v. Haller*, 780 F.2d at

---

3. The Panel can decide the case based on Helen's brief and the record which she provided. Failure to file a responsive brief does not automatically result in an appellant prevailing on appeal. *See In re Wada*, 210 B.R. 572 n. 2 (9th Cir. BAP 1997).

4. Davis was decided under § 17(a)(4), the predecessor to § 523(a)(4). As the language of the provision governing defalcation while acting in a fiduciary capacity is almost identical under the Bankruptcy Act and the Bankruptcy Code, the case law construing Bankruptcy Act § 17(a)(4) should be followed in

796. Implied or constructive trusts, and trusts *ex maleficio* (trusts created merely on the basis of wrongful conduct) do not create a fiduciary relationship within the purview of § 523(a)(4). *In re Short*, 818 F.2d 693, 695 (9th Cir.1987). "Instead, the fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *In re Lewis*, 97 F.3d at 1185.

▮ Whether a relationship is a fiduciary one within the meaning of § 523(a)(4) is an issue of federal law. *In re Lewis*, 97 F.3d at 1185. The determination relies, however, upon whether the requisite trust relationship exists under state law. *In re Abrams*, 229 B.R. 784, 789 (9th Cir. BAP 1999).

### B. "Express" or "Technical" Trusts.

▮ Generally, an express trust is created by an agreement between two parties to impose a trust relationship. The general characteristics of an express trust are: (1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or res. *In re Thornton*, 544 F.2d 1005, 1007 (9th Cir.1976); *Reagh v. Kelley*, 10 Cal.App.3d 1082, 1089, 89 Cal.Rptr. 425 (1970).

▮ The "technical" or "express" trust requirement includes relationships in which trust-type obligations are imposed pursuant to statute or common law. *In re Bennett*, 989 F.2d 779, 784–85 (5th Cir.), *cert. denied*, 510 U.S. 1011, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993).

Accordingly, state statutes and case law are examined to determine whether they impose traditional trust-like relationships prior to and without reference to the wrong which created the debt.

For example, in *In re Teichman*, 774 F.2d 1395 (9th Cir.1985), the Ninth Circuit analyzed a property settlement agreement and determined that it did not have the elements of a valid trust under California law for the purposes of § 523(a)(4). Additionally, the *Teichman* court reviewed the California constructive trust statutes.[5] The court determined, however, that under their terms a constructive trust would only be imposed after the husband had defaulted. This did not render the debt nondischargeable under § 523(a)(4) because "[t]hat section requires the husband to have been acting in a fiduciary capacity at the time of the default." *Teichman*, 774 F.2d at 1400.

In *Ragsdale v. Haller*, 780 F.2d at 794, a partner in a fishing enterprise had failed to disclose certain bonuses paid to himself from partnership receipts. Ragsdale, his business partner, filed a nondischargeability complaint under § 523(a)(4) and argued that partners were § 523(a)(4)-type fiduciaries under the California partnership statute, CAL. CORP. CODE § 15021. The court concluded that the statute did not create the fiduciary capacity required by § 523(a)(4). The Ninth Circuit reasoned that in § 15021, a trust arose only when a partner derived profits without the consent of the partnership. Thus, the duty in CAL. CORP. CODE § 15021 created the sort of trust *ex maleficio* which was not within the meaning of § 523(a)(4). *Ragsdale*, 780 F.2d at 796.

interpreting § 523(a)(4). *In re Paeplow*, 217 B.R. 705, 709 n. 4 (Bankr.D.Vt.1998).

5. CAL. CIV. CODE § 2223 provided:
INVOLUNTARY TRUSTEE, WHO IS. One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner.
CAL. CIV. CODE § 2224 provided:

INVOLUNTARY TRUST RESULTING FROM NEGLIGENCE, ETC. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.

The *Ragsdale* court, however, went on to examine California case law. It held that case law, apart from the statutory law, had raised the duties of partners beyond those required by the literal wording of the statute.[6] California case law said that partners were trustees for each other in all proceedings in connection with the partnership and were required to act in good faith. The Ninth Circuit noted that the cases created more than just a fiduciary relationship in response to some wrongdoing. California case law made partners trustees within the meaning of § 523(a)(4).

Similarly, in *In re Lewis*, 97 F.3d at 1182, a business partner argued that an Arizona partnership statute imposed a § 523(a)(4)-type trust upon the partners. Because the Arizona partnership statute was identical to the California statute in *Ragsdale v. Haller*, the Ninth Circuit acknowledged that it was precluded from holding that Arizona's identical statute imposed an express trust upon partners.

Nevertheless, the *Lewis* court analyzed Arizona case law and determined that Arizona corporate partners were fiduciaries within the meaning § 523(a)(4).[7]

■ This line of Ninth Circuit decisions recognizes that either statutes or case law can give rise to a trust within the meaning of § 523(a)(4). In *Ragsdale* and *Lewis*, state partnership case law gave rise to a trust within the meaning of § 523(a)(4) pursuant to relatively broad language that partners are "trustees" or "fiduciaries" of one another, bound to act in the highest good faith, and restrained from gaining advantage over the other by misrepresentation, concealment, threat, or pressure. The trust res is implied, the case law imposes specific duties with regard to the res, and the trust exists without reference to any wrongdoing.

■ Accordingly, we must determine whether California statutory or case law with regard to community property creates an express or technical trust within the meaning of § 523(a)(4).

## C. Statutory Law.

■ For a statute to create a technical trust, the statute must define the trust res, spell out the trustee's fiduciary duties, and impose a trust prior to and without reference to the wrong which created the debt. *In re Baird*, 114 B.R. 198, 202 (9th Cir. BAP 1990).

### 1. CAL. FAM. CODE § 1100(e).

CAL. FAM. CODE § 1100(e)(West 1999) specifically defines the marital relationship as a fiduciary relationship. In addition, it spells out the duty of full disclosure. It provides:

Each spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence as specified in Section 721, until such

---

6. The following language in *Leff v. Gunter*, 33 Cal.3d 508, 514, 189 Cal.Rptr. 377, 658 P.2d 740 (1983) was the source of fiduciary duty among partners under California law in *Ragsdale:*

Partners are trustees for each other and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind.

7. The court found that the following language in *DeSantis v. Dixon*, 72 Ariz. 345, 350, 236 P.2d 38 (1951) created a fiduciary relationship for the purposes of § 523(a)(4):

The relation of partnership is fiduciary in character, and imposes upon the members of the firm the obligation of the utmost good faith in their dealings with one another with respect to partnership affairs, of acting for the common benefit of all the partners in all transactions relating to the firm business, and of refraining from taking any advantage of one another by the slightest misrepresentation, concealment, threat or adverse pressure of any kind.

time as the assets and liabilities have been divided by the parties or by a court. This duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request.

CAL. FAM. CODE § 1100(e).[8]

## 2. CAL. FAM. CODE § 721.

CAL. FAM. CODE § 721(b)(West 1999) further defines the duties to make full disclosure and account for community assets as follows:

[I]n transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 15019, 15020, *15021*,[9] and 15022 of the Corporations Code, including the following:

(1) Providing each spouse access at all times to any books kept regarding a transaction for the purposes of inspection and copying.

(2) Rendering upon request, true and full information of all things affecting any transaction which concerns the community property. Nothing in this section is intended to impose a duty for either spouse to keep detailed books and records of community property transactions.

(3) Accounting to the spouse, and holding as trustee, any benefit or profit derived from any transaction by one spouse without the consent of the other spouse which concerns the community property. (Emphasis added).

The Ninth Circuit has held that the type of duty set out in CAL. CORP. CODE § 15021, which is cited in CAL. FAM. CODE § 721(b)(3), creates the sort of trust *ex maleficio* which is not within the meaning of § 523(a)(4). This is because a trust arises only when a partner derived profits without the consent of the partnership. *Ragsdale v. Haller*, 780 F.2d at 794.

While CAL. FAM. CODE § 721(b) relies in part on CAL. CORP. CODE § 15021, the fiduciary duty defined in CAL. FAM. CODE § 721 encompasses more than the duty to account for profits received without consent of the other spouse. CAL. FAM. CODE § 721 imposes upon spouses the rules governing "fiduciary relationships" and the duties of "the highest good faith and fair dealing." These duties arise without reference to any wrongdoing or failure to account for a benefit received.

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property. CAL. CORP. CODE § 15021 was repealed effective January 1, 1999. The provision that a partner holds profits "as a trustee" is now found at CAL. CORP. CODE § 16404 (West 1999).

---

8. Section 1100 continues former Civil Code § 5125. Effective January 1, 1992, former § 5125(e) was amended to delete a provision which made trust case law inapplicable to § 5125. Prior to the amendment, § 5125(e) stated that "[t]he case law defining the standard of care applicable to Section 5103, but not the case law applicable to [trust law], applies to this section." The provision making trust case law inapplicable was deleted by the amendment. (Stats.1991, ch. 1026, § 3).

9. Section 15021 provided, in relevant part:

### 3. CAL. FAM. CODE § 2102.

CAL. FAM. CODE § 2102 (West 1999) makes it plain that spouses co-exist in a "fiduciary relationship" before and without reference to any wrongdoing. Pursuant to CAL. FAM. CODE § 2102, the fiduciary relationship exists "from the date of separation" to the date of the division of the community assets. CAL. FAM. CODE § 2102 provides as follows:

2102. Fiduciary relationship.

From the date of separation to the date of the distribution of the community asset or liability in question, each party is subject to the standards provided in Section 721, as to all activities that affect the property and support rights of the other party, including, but not limited to, the following activities:

(a) The accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation and all current earnings, accumulations, and expenses.

(b) The accurate and complete written disclosure of any investment opportunity that presents itself after the date of separation, but that results from any investment of either spouse from the date of marriage to the date of separation, inclusive. The written disclosure shall be made in sufficient time for the other spouse to make an informed decision as to whether he or she desires to participate in the investment opportunity. In the event of nondisclosure of such an investment opportunity, the division of any gain resulting from that investment opportunity is governed by the standard provided in Section 2556.

(c) The operation or management of a business or an interest in a business in which the community may have an interest.

The statutory scheme provided in the California Family Code establishes the type of "fiduciary capacity" within the meaning of § 523(a)(4). Pursuant to CAL. FAM. CODE §§ 721 and 1100(e), spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relationships with each other, including the duty of highest good faith and fair dealing and the duty not to take unfair advantage of the other.

Although the statutes do not expressly state that the trust res is the community property, the duties in the statutes relate to community property. Thus it is implied that the community property is the trust res.

Furthermore, the statutes spell out the spouses' fiduciary duties. Under CAL. FAM. CODE § 1100(e) and CAL. FAM. CODE § 721 spouses must: (1) make full disclosure of the existence of all community assets; (2) provide access to all information that pertains to the assets; and (3) provide full information regarding any transaction affecting the community assets.

Finally, these duties arise before and without reference to any failure to account or other wrongdoing committed by a spouse.[10] Pursuant to CAL. FAM. CODE § 2102, the fiduciary relationship exists from the date the spouses separate until the date the community assets are distributed by a court.

Thus, Samuel's fiduciary duty existed before he failed to disclose the pension proceeds to Helen and spent the money.

---

**10.** Indeed it appears that pursuant to California law the fiduciary duty arises upon the spouses' marriage, when confidence and control are first reposed in the other spouse. *See In re Marriage of Reuling,* 23 Cal.App.4th 1428, 1438, 28 Cal.Rptr.2d 726 (1994)("a fiduciary relationship ... ordinarily arises where a confidence is reposed by one person in the integrity of another...."); *Vai v. Bank of America,* 56 Cal.2d 329, 337, 15 Cal.Rptr. 71, 364 P.2d 247 (1961)("fiduciary relationship arises by virtue of the community property system which gives the husband management and control").

We need not reach that issue, however, as the retirement benefits at issue in this case were received by Samuel after the parties were divorced.

This fact distinguishes the instant appeal from *In re Teichman*, 774 F.2d at 1395.

In *Teichman*, two divorcing spouses entered into a property settlement agreement whereby the wife was to receive payments amounting to 43% of the husband's military pension. Upon their divorce, the judgment of dissolution incorporated the terms of the settlement agreement. Eventually, the husband terminated the payments required by the judgment and filed for bankruptcy. The former wife alleged that the benefits were nondischargeable pursuant to § 523(a)(4) because the husband was acting in a fiduciary capacity at the time he received them. The court found that a fiduciary relationship did not exist under either the property settlement agreement or state constructive trust statutes, and held that "as a general rule the exception to discharge in 11 U.S.C. § 523(a)(4) should not apply in connection with a property settlement agreement and a divorce decree." *Teichman*, 774 F.2d at 1400.

In *Teichman*, however, at the time of the divorce the community property was divided by the court pursuant to the property settlement agreement. Accordingly, there was no more community property that could be the subject of a fiduciary duty when the husband terminated the payments. In the present case, the community property had not been divided prior to the 1995 Order. CAL. FAM. CODE § 1100(e) specifically provides that a spouse's fiduciary duty exists "until such time as the assets and liabilities have been divided by the parties or by a court." Thus in the present case a fiduciary duty existed at the time Samuel failed to disclose or account for the pension benefits.[11]

In light of the statutory scheme provided in the California Family Code, we hold that California statutory law imposes a fiduciary duty upon spouses and former spouses in their dealings with regard to community property which is within the meaning of § 523(a)(4).

### D.  State Case Law.

California case law also creates the type of trust within the purview of § 523(a)(4).

A trust within the meaning of § 523(a)(4) may arise by virtue of state case law. *In re Lewis*, 97 F.3d at 1182; *In re Abrams*, 229 B.R. 784, 790 n. 6 (9th Cir. BAP 1999). In making this determination, state case law is examined to determine if courts impose fiduciary obligations within the meaning of § 523(a)(4). *See, e.g., Ragsdale v. Haller*, 780 F.2d at 796; *In re Lewis*, 97 F.3d at 1186.

In this case, a review of the California case law reveals that it gives rise to the core requirements of a trust and to the type of fiduciary relationship contemplated within the meaning of § 523(a)(4). California courts have long recognized that a marriage creates a fiduciary relationship between spouses. The trust res is implied, as the property at issue is the spouses' community property. The fiduciary duties are spelled out—the disclosure of and accounting for community property. This fiduciary duty does not operate only after an act of wrongdoing has occurred, but instead exists without reference to any wrongdoing. Pursuant to California case law:

[E]ach spouse has an obligation to inform the other spouse of the existence of

---

11. *Teichman* did not address California family law statutes. Nevertheless, it is important to note that at the time *Teichman* was decided spousal duties concerning the management and control of property were governed by former § 5125 of the California Civil Code. That section provided that one spouse owed the other an obligation to "act in good faith with respect to the other spouse in the management and control of community property."

Several years after *Teichman*, California statutes were amended to heighten the duty of care owed between spouses. Effective January 1, 1992, the duty that a spouse act in "good faith" with respect to the other was replaced with the heightened requirement that spouses act in accordance with the rules governing "fiduciary relationships." (Stats. 1991, ch. 1026, § 3).

community property assets. This duty stems in part from the confidential nature of the marital relationship. It also arises from the fiduciary relationship that exists between spouses with respect to the control of community property. When one spouse manages a community asset, he or she exercises control over the property interests of the other spouse. Therefore, the controlling spouse has a duty to disclose the existence of that asset. This fiduciary relationship does not terminate with the separation of the spouses or the commencement of a dissolution proceeding. The duty of disclosure continues until the marriage has been dissolved and the community property divided by the court.

*Marriage of Modnick,* 33 Cal.3d 897, 905, 191 Cal.Rptr. 629, 663 P.2d 187 (1983) (citations omitted). *See also Jorgensen v. Jorgensen,* 32 Cal.2d 13, 21, 193 P.2d 728 (1948)(each spouse occupies a position of trust and has a fiduciary duty to account for community property); *Vai v. Bank of America,* 56 Cal.2d 329, 337, 15 Cal.Rptr. 71, 364 P.2d 247 (1961)(because of husband's management and control over the community property, he "occupies the position of trustee" for his wife in respect to her one-half interests in the community assets).[12]

These cases show that California has made spouses trustees over the community property before and without reference to any wrongdoing. This is not the type of trust which arises *ex maleficio.* Accordingly, California case law has established the type of trust which is within the purview of § 523(a)(4).

12. Effective January 1, 1975, the Legislature amended CAL. CIVIL CODE §§ 5125 and 5127, giving spouses equal management and control of the community property. (Stats. 1973, ch. 987, §§ 14 and 15, pp. 1901–1902). There is no indication that because California now imposes a reciprocal fiduciary duty on both spouses, the duty as a trustee does not remain. *See, e.g., Marriage of Cairo,* 204 Cal.

This ruling is not intended to expand the application of § 523(a)(4) to the vast array of relationships which might be deemed fiduciary or confidential under state law. The Ninth Circuit has consistently limited the application of § 523(a)(4) to situations where a fiduciary relationship arises from an express or technical trust imposed before and without reference to any wrongdoing.

In light of the provisions of the California Family Code and California case law, however, we hold that California law imposes a fiduciary duty on spouses and former spouses with regard to community property within the narrow meaning of § 523(a)(4).

### E. Defalcation.

■ " 'Defalcation' is defined as the misappropriation of trust funds or money held in any fiduciary capacity; the failure to properly account for such funds." *In re Lewis,* 97 F.3d at 1186 (9th Cir.1996).

■ Helen established at trial that Samuel retained the lump sum cash distribution and the IRA rollover which he received prior to the 1995 Order without paying her, and that he did not begin paying her any monthly distributions until March, 1998. Samuel retained these funds while they were entrusted to him as a fiduciary. This conduct meets the definition of "defalcation."

Accordingly, the bankruptcy court erred in determining that Samuel's debt to Helen for the pension benefits received prior to the 1995 Order is not excepted from discharge under § 523(a)(4).

App.3d 1255, 1261, 251 Cal.Rptr. 731 (1988)("[d]uring marriage there is a confidential relationship between husband and wife which imposes trust and confidence between them; in addition, spouses have a duty to deal with one another in good faith about the management and control of community property").

## II. § 523(a)(15).

Helen contends that the bankruptcy court erred in determining Samuel's relevant financial information as of the time of trial, and instead should have determined that Samuel "voluntarily disabled himself from employment" to avoid paying Helen.

Because we agree that Samuel's debt is nondischargeable under § 523(a)(4), we need not address Helen's argument that the debt is nondischargeable under § 523(a)(15).

## CONCLUSION

For the reasons stated above we REVERSE the bankruptcy court's determination that Samuel's debt to his former spouse for pension benefits received before the 1995 Order is not excepted from discharge under § 523(a)(4). This matter is REMANDED for entry of a judgment.