**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DOUBLE BOGEY, L.P., a California limited partnership,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>SYLVESTER FRANK ENEA; PAUL JOSEPH ENEA,<br>*Defendants-Appellees*. | No. 13-15809<br><br>D.C. No.<br>3:12-cv-01877-SI<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted
May 14, 2015—San Francisco, California

Filed July 22, 2015

Before: Diarmuid F. O'Scannlain and Sandra S. Ikuta,
Circuit Judges and Larry A. Burns,* District Judge.

Opinion by Judge O'Scannlain

---

*The Honorable Larry A. Burns, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

## SUMMARY[**]

### Bankruptcy

The panel affirmed the district court's affirmance of the bankruptcy court's judgment in a creditor's adversary proceeding claiming that a debt was not dischargeable in bankruptcy under 11 U.S.C. § 523(a)(4) because it was a debt for fraud or defalcation by a fiduciary.

The panel held that a finding that the debtors, who owned and operated a fiduciary corporation, were the corporation's alter egos under California law was insufficient to show that they therefore also were fiduciaries of the creditor under § 523(a)(4).

### COUNSEL

Miriam Hiser, Law Offices of Miriam Hiser, San Francisco, CA, argued the cause for the Appellant. With her on the briefs was William H. Armstrong, Armstrong & Associates, LLP, Oakland, California.

Lisa Lenherr, Tiemstra Law Group, PC, Oakland, CA, argued the cause for Appellee Paul Enea.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether California's alter ego doctrine can create a "fiduciary" relationship under the Bankruptcy Code.

I

This case arises from a dispute between two non-natural persons, Double Bogey, L.P. and Appian Construction, Inc., regarding Appian's alleged mismanagement of Double Bogey's investments in several real estate projects. However, we are not presented with the question of Appian's liability. Rather, we consider the liability of the two natural persons who owned and operated it.

Appian was created by brothers Paul and Sylvester Enea, who served as its only shareholders and officers.[1] The company managed several real estate development projects, including the two projects relevant to this case: 1221 Monticello, L.L.P., of which Appian was a General Partner, and Monterrosa, L.L.C., of which Appian was the Managing Member. Double Bogey invested approximately $4 million in Monticello as its Limited Partner, and approximately $1 million in Monterrosa as a non-managing member.

Double Bogey never recovered any of its investment in Monterrosa. It also did not receive profits to which it argues it was entitled from both Monticello and Monterrosa. After

---

[1] The parties dispute whether Sylvester Enea was actually a shareholder in Appian. We need not and do not resolve that dispute.

Appian failed to provide an accounting of Double Bogey's investments, Double Bogey filed suit against Appian and the Eneas in state court in September of 2008. Roughly a year later, the Eneas separately filed for bankruptcy under Chapter 7 of the Bankruptcy Code (the "Code"). Appian also filed under Chapter 7 in November of 2009.

Double Bogey brought an adversary proceeding in the bankruptcy court, claiming, among other things, that: (1) Appian was Double Bogey's fiduciary with respect to the real estate investments, (2) Appian was liable for Double Bogey's lost principal and profits in Monterrosa and its lost profits in Monticello, (3) such liabilities were created by Appian's "defalcation,"[2] (4) liabilities created by a fiduciary's defalcation are not dischargeable in bankruptcy under Section 523(a)(4) of the Code,[3] and—of most importance here—

---

[2] The specific definition of "defalcation" is not easily ascertained. As the Supreme Court has explained, "Congress first included the term 'defalcation' as an exception to discharge in a federal bankruptcy statute in 1867," and "legal authorities have disagreed about its meaning almost ever since." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1758 (2013).

Current legal dictionaries variously define it as "embezzlement," "the failure to meet an obligation; a nonfraudulent default," "to misuse funds," "a fraudulent deficiency in money matters," and "misappropriation of money in one's keeping." *Id.* (collecting sources). For purposes of this appeal we assume, without deciding, that Appian's failure to provide an accounting of Double Bogey's investment constitutes "defalcation" by a fiduciary under Section 523(a)(4).

[3] Section 523(a) of the Code states, in relevant part, that, "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

(5) the Eneas were also liable for such non-dischargeable debt either by way of their own defalcation or as alter egos of Appian. After Double Bogey presented its case-in-chief, the Eneas moved for Judgment on Partial Findings under Bankruptcy Rule 7052.

The bankruptcy court entered judgment in favor of the Eneas. The court noted that the Eneas conceded that Appian was a fiduciary of Double Bogey for purposes of Section 523(a)(4) of the Code, and that—by presenting evidence that the Eneas had failed to respect corporate formalities and used corporate funds for personal expenses—Double Bogey had made a "prima facie case" that the Eneas were Appian's alter egos. However, the court decided that merely finding the Eneas were alter egos of Appian under California law was insufficient to hold that they were "fiduciaries" of Double Bogey, at least inasmuch as that term is narrowly defined in Section 523(a)(4). Thus, Double Bogey's claim that the Eneas were liable for defalcation by a "fiduciary" failed.

The district court affirmed the bankruptcy court and entered an order to that effect. *See In re Enea*, No. ADV 11-3017 DM, 2013 WL 1209479, at *3, *4 (N.D. Cal. Mar. 25, 2013). Double Bogey timely appealed.

II

On appeal, Double Bogey argues that because the Eneas are the alter egos of Appian under California law—and because Appian was a fiduciary of Double Bogey—the Eneas are also "fiduciaries" of Double Bogey under 11 U.S.C. § 523(a)(4). We are thus confronted by a single question of law: whether a debtor can be considered a

"fiduciary" under Section 523(a)(4) solely by the application of California's alter ego doctrine.

"Because we are in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court's decision." *Pizza of Hawaii, Inc. v. Sharkey's, Inc.*, 761 F.2d 1374, 1377 (9th Cir. 1985). Whether a relationship is a "fiduciary" one within the scope of 11 U.S.C. § 523(a)(4) is a question of federal law that we review de novo. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986).

## A

"[W]e have adopted a narrow definition of 'fiduciary' for purposes of § 523(a)(4)." *In re Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003). Under such definition, "[t]he broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable." *Ragsdale*, 780 F.2d at 796. As the pre-eminent bankruptcy treatise explains, "[f]or purposes of section 523(a)(4), the definition of 'fiduciary' is narrowly construed, meaning that the applicable nonbankruptcy law that creates a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property." 4 Collier on Bankruptcy, ¶ 523.10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

While we may consult state law—like the alter ego doctrine—when interpreting whether an individual is a "fiduciary" under Section 523(a)(4), we ultimately are interpreting a federal statute, and the issue presented is one of federal law. *See Ragsdale*, 780 F.2d at 796. Thus, "the mere fact that state law places two parties in a relationship that may

have some of the characteristics of a fiduciary relationship does not necessarily mean that the relationship is a fiduciary relationship under 11 U.S.C. § 523(a)(4)." 4 Collier on Bankruptcy, ¶ 523.10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Indeed, "[i]f applicable nonbankruptcy law does not clearly and expressly impose trust-like obligations on a party, [courts] will not assume that such duties exist and will not find that there was a fiduciary relationship." *Id*.

Further, "the fiduciary relationship must be one arising from an express or technical trust that was imposed *before and without reference to* the wrongdoing that caused the debt." *In re Cantrell*, 329 F.3d at 1125 (emphasis added) (quoting *Lewis v. Scott* (*In re Lewis*), 97 F.3d 1182, 1185 (9th Cir. 1996)). Thus, Section 523(a)(4) applies "only to a debt created by a person who was already a fiduciary when the debt was created." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934) (internal quotation marks omitted).

B

Common-law doctrines—like California's alter ego doctrine—rarely impose the trust-like obligations sufficient to create a fiduciary relationship under Section 523(a)(4). Indeed the kinds of trusts typically created by operation of law—constructive, resulting, or implied trusts—*never* satisfy Section 523(a)(4)'s rigorous requirements. *See Ragsdale*, 780 F.2d at 796. In the few instances where we have recognized a fiduciary relationship in part based on common-law doctrines, such doctrines merely heightened—in clear and express language—duties already imposed by statute.

Specifically, in *Ragsdale, In re Short*, and *In re Lewis*, we concluded that California, Washington, and Arizona state

courts respectively, had, through interpretation of state partnership law, "raised the duties of partners beyond those required by the literal wording" of the state partnership statutes—and raised partners' duties to such a degree that they were trustees and "fiduciaries" over partnership assets under Section 523(a)(4). *Ragsdale*, 780 F.2d at 796; *see also In re Lewis*, 97 F.3d at 1186; *In re Short*, 818 F.2d 693, 695 (9th Cir. 1987). This was not a difficult conclusion to reach: indeed in *Ragsdale* we noted that California courts stated, quite simply, that "[p]artners are trustees for each other." *Ragsdale*, 780 F.2d at 796 (quoting *Leff v. Gunter*, 658 P.2d 740, 744 (Cal. 1983) (internal quotation marks omitted)); *see also In re Short*, 818 F.2d at 695 ("[T]he managing partner is acting as a trustee for his firm." (emphasis omitted) (quoting *In re Wilson's Estate*, 315 P.2d 287, 292 (Wash. 1957)) (internal quotation marks omitted)); *In re Lewis*, 97 F.3d at 1186 ("The relation of partnership is fiduciary in character . . . ." (quoting *DeSantis v. Dixon*, 236 P.2d 38, 41 (Ariz. 1951)) (internal quotation marks omitted)).

We thus easily concluded that California, Washington, and Arizona partnership law clearly and expressly imposed trust-like obligations on partners—explicitly outlining partner's fiduciaries duties and identifying the assets of the partnership as the trust res over which partners are fiduciaries. *See Ragsdale*, 780 F.2d at 796 (describing California law's requirement that partners act as trustees and "in the highest good faith" over "the assets of the partnership"); 4 Collier on Bankruptcy, ¶ 523.10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("For purposes of section 523(a)(4), the . . . applicable nonbankruptcy law . . . must clearly outline the fiduciary duties and identify the trust property."). Further, because state law established that partners were trustees over partnership assets "for all

purposes" throughout the duration of the partnership, we concluded such law made partners trustees prior to any defalcation—as required by Section 523(a)(4). *See Ragsdale*, 780 F.2d at 796–97.

C

Here, by contrast, California's alter ego doctrine does not explicitly create a trust relationship, either by raising existing legal duties or otherwise. Nor does it come into operation prior to wrongdoing—rather it merely operates to hold an individual liable for his corporation's already-existing debt.

Instead of creating, enforcing, or expounding on substantive duties, California's alter ego doctrine merely acts as a procedural mechanism by which an individual can be held jointly liable for the wrongdoing of his or her corporate alter ego. *See Mesler v. Bragg Mgmt. Co.*, 702 P.2d 601, 607 (Cal. 1985); *see also Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1251 (9th Cir. 2010) ("'A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural. . . .'" (quoting *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 251 Cal. Rptr. 859, 863 (Ct. App. 1988))).

D

We cannot conclude that California's alter ego doctrine— which, inasmuch as it can be defined,[4] is a means for adding

---

[4] California's alter ego doctrine is broad and ambiguous—it is less a single principle of law and more a broad, flexible device applied in various ways to ensure "that justice be done." *Mesler*, 702 P.2d at 607.

a corporation's owners as judgment debtors for the corporation's liabilities—clearly and explicitly creates a trust relationship in "that strict and narrow sense" required by the Code.  *See In re Lewis*, 97 F.3d at 1185 (quoting *Davis*, 293 U.S. at 333).  Even if this broad procedural device could have been used in a California court to hold the Eneas liable for Appian's alleged wrongdoing, it could not and did not impose fiduciary duties "before and without reference to" such wrongdoing.  *See In re Cantrell*, 329 F.3d at 1125 (citing *In re Lewis*, 97 F.3d at 1185).

Double Bogey argues that, although the alter ego doctrine is procedural in nature, in this case it operated to impose specific *substantive* fiduciary duties over a specific trust res. It asserts that the Eneas owed the same duties as Appian over the assets of Monterrosa and Monticello, because under the alter ego doctrine the Eneas and Appian were, for a certain period, legally the same entity.

But we cannot use California's alter ego doctrine to hold the Eneas and Appian were one and the same.  *See Mesler*, 702 P.2d at 607 ("It is not that a corporation will be held liable for the acts of another corporation because there is really only one corporation.").  Although California's alter

---

"What the [doctrine] comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result."  *Id*. (internal quotation marks omitted).  Indeed the "conditions under which the corporate entity may be disregarded, or the corporation be regarded as the alter ego of the stockholders, necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and . . . [o]nly general rules may be laid down for guidance."  *Talbot v. Fresno-Pac. Corp.*, 5 Cal. Rptr. 361, 366 (Ct. App. 1960) (internal quotation marks omitted).

ego doctrine may allow for a "a hole [to] be drilled in the wall of limited liability erected by the corporate form" in order to collect a particular debt, "for all purposes other than that for which the hole was drilled, the wall still stands." *Id.* When an individual is held liable for an act of his corporate alter ego under California law, it is not because the individual inherited his corporation's duties and breached them himself. *See id*. at 608. Indeed, the liable individual "has done nothing affirmative to prejudice the [injured] party" but is held liable for his corporation's wrongdoing in order to provide an additional source of relief to the aggrieved party. *Id*. (internal quotation marks omitted).

A doctrine which merely supplies an additional judgment defendant *after* liability exists does not clearly and expressly impose trust-like obligations *prior* to the creation of that same liability. *See Davis*, 293 U.S. at 333 (noting that for a debtor to be a fiduciary under the Code, he "must have been a trustee before the wrong and without reference thereto"). Therefore, we cannot conclude, as a matter of federal law, that California's alter ego doctrine establishes that a corporate debtor's alter ego "is a trustee in that strict and narrow sense" required by the Code. *See In re Lewis*, 97 F.3d at 1185 (quoting *Davis*, 293 U.S. at 333).

III

Regardless of the ends to which the alter ego "procedural device" may be put in California state court, it does not clearly and expressly impose trust obligations prior to defalcation as required by Section 523(a)(4). The narrow

issue presented is whether California's alter ego doctrine alone can create a "fiduciary" relationship under the Code. We must conclude that it cannot.

**AFFIRMED**.