NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 11 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re:   RICHARD YIN-CHING HOUNG, AKA Richard Houng, | No. 13-56656 |
| Debtor, | D.C. No. 8:12-cv-01341-MMM |
| _____ RICHARD YIN-CHING HOUNG, | MEMORANDUM* |
| Appellant, | |
| v. | |
| TATUNG COMPANY, LTD, a Taiwan limited company, | |
| Appellee. | |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted November 3, 2015
Pasadena, California

Before: SCHROEDER, PREGERSON, and FRIEDLAND, Circuit Judges.

Richard Houng appeals the district court's affirmance of the bankruptcy

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

court's holding that his debt to Tatung Company, Ltd. ("Tatung") is nondischargeable under 11 U.S.C. § 523(a)(4). Specifically, Houng argues that the fiduciary duty that arises from California's common law trust fund doctrine—which the bankruptcy court, pursuant to preclusive findings[1] made by an arbitrator in a separate proceeding, found Houng had violated—does not establish a "fiduciary" relationship within the meaning of § 523(a)(4) and thus is insufficient to trigger nondischargeability. We disagree with Houng and affirm.[2]

Section 523(a)(4) "provides that debts that arise from 'fraud or defalcation while [the debtor was] acting in a fiduciary capacity, embezzlement or larceny,' are nondischargeable." *Ragsdale v. Haller*, 780 F.2d 794, 795-96 (9th Cir. 1986) (alteration in original) (quoting 11 U.S.C. § 523(a)(4)).[3] Whether someone is a

---

[1] Houng argues that the bankruptcy court erred in giving preclusive effect to the arbitrator's findings regarding breach of fiduciary duty. At oral argument, Houng's counsel acknowledged that Houng's briefing was "deficient" for failing to adequately cite to the record and abandoned Houng's challenge to the preclusion ruling because of that deficiency. Counsel later in oral argument suggested a desire to withdraw the abandonment, but never offered to supplement the excerpts of record or briefing. We conclude that, whether abandoned or not, Houng's inadequately supported issue preclusion arguments fail. *See First Card v. Hunt (In re Hunt)*, 238 F.3d 1098, 1105 (9th Cir. 2001).

[2] Because we affirm on § 523(a)(4) grounds, we need not address Tatung's alternative bases for affirmance.

[3] "Defalcation" is defined as the "misappropriation of trust funds or money held in any fiduciary capacity; [or] [the] failure to properly account for such funds." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1186 (9th Cir. 1996) (second alteration

2

"fiduciary" for purposes of § 523(a)(4) is a question of federal law. *Id.* at 796.

We have "adopted a narrow definition of 'fiduciary' for purposes of § 523(a)(4)"

as a type of relationship "arising from an express or technical trust that was

imposed before and without reference to the wrongdoing that caused the debt."

*Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir. 2003)

(quoting *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996)).

Although the definition of "fiduciary" is a matter of federal law, "state law is to be

consulted to determine when a trust in this strict sense exists." *Ragsdale*, 780

F.2d at 796. If state law does not "clearly and expressly impose trust-like

obligations on a party," courts "will not assume that such duties exist and will not

find that there was a fiduciary relationship." 4 Collier on Bankruptcy, ¶ 523.10

(Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

California courts adhere to the "trust fund doctrine," pursuant to which "all

of the assets of a corporation, immediately upon becoming insolvent, become a

trust fund for the benefit of all [of the corporation's] creditors[]."[4] *Berg & Berg*

*Enter., LLC v. Boyle*, 100 Cal. Rptr. 3d 875, 893 (Cal. Ct. App. 2009). In *Berg,*

---

in original) (quoting Black's Law Dictionary 417 (6th ed. 1990)). Houng does not dispute that the arbitrator's factual findings satisfy the defalcation element.

[4] Consistent with the choice of law clause in their Product Supply Agreement, the parties agree that California law is to be consulted to determine whether a trust was created when Westinghouse became insolvent.

the court held that the duties directors owe to creditors upon insolvency are generally limited to "*avoidance of actions that divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors*['] *claims*," by "divert[ing] assets of the corporation for the benefit of insiders or preferred creditors." *Id.* at 893-94.[5]

We agree with Tatung that the duties created by the trust fund doctrine satisfy the criteria for a "fiduciary" relationship for purposes of nondischargeability under § 523(a)(4). The trust fund doctrine "clearly and expressly impose[s] trust-like obligations" on the controllers of an insolvent entity. 4 Collier on Bankruptcy, ¶ 523.10. Because the duties arise at insolvency, *see Berg*, 100 Cal. Rptr. 3d at 893, and require the *avoidance* of "divert[ing], dissipat[ing], or unduly risk[ing] corporate assets," *id.* at 894, the fiduciary relationship exists "prior to any wrongdoing" and "without reference to [the wrong]," as required by § 523(a)(4). *Ragsdale*, 780 F.2d at 796. This is in contrast to a trust "ex maleficio," *i.e.*, a trust that arises "by operation of law upon

---

[5] The district court considered but rejected the possibility that the trust fund doctrine has been preempted by the California Corporations Code. *See In re Houng*, 499 B.R. 751, 767 n.50 (C.D. Cal. 2013) (citing *Pac. Scene v. Penasquitos, Inc.*, 758 P.2d 1182 (Cal. 1988) (In Bank) and concluding that, at least for purposes of the dischargeability inquiry, the doctrine has not been preempted). Houng has waived any argument that the district court erred in this determination by not raising the issue on appeal.

a wrongful act," that we have held is outside of § 523(a)(4)'s purview. *Blyler v.*

*Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1189-90 (9th Cir. 2001).

With regard to whether the trust doctrine creates an "express or technical"

trust, "[m]ost courts . . . recognize that the 'technical' or 'express' trust

requirement [for nondischargeability] is not limited to trusts that arise by virtue of

a formal trust agreement, but includes relationships in which trust-type obligations

are imposed pursuant to statute or common law." *LSP Inv. P'ship v. Bennett (In*

*re Bennett)*, 989 F.2d 779, 784-85 (5th Cir. 1993); *see also, e.g.*, *Lovell v. Stanifer*

*(In re Stanifer)*, 236 B.R. 709, 714 (BAP 9th Cir. 1999). Indeed, decades ago our

court recognized that qualifying as a "fiduciary" for nondischargeability purposes

does not require formalistically satisfying the technical requirements of specific

categories of trusts. *Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756, 758

n.2 (9th Cir. 1981). Instead, in analyzing whether certain California statutory law

could satisfy the precursor to § 523(a)(4), we held that "[t]he precise manner in

which a trust is created . . . is of little importance. Rather, the focus should be on

whether true fiduciary responsibilities have been imposed." *Id.* We held that the

"core requirements" for determining whether the requisite "trust-like obligations"

are imposed, "are that the relationship exhibit characteristics of the traditional trust

relationship, and that the fiduciary duties be created before the act of wrongdoing

and not as a result of the act of wrongdoing." *Id.* at 758-59. We have continued

to apply these same standards to determine whether a trust is sufficient to create a "fiduciary" relationship within the meaning of § 523(a)(4). *See In re Hemmeter*, 242 F.3d at 1189-90; *Ragsale*, 780 F.2d at 796.

Accordingly, in more recent cases, we have looked to state common law in applying the trust requirement of § 523(a)(4), without strict regard to whether the trust created by common law was "express" or "technical." *See Ragsdale*, 780 F.2d at 797; *In re Lewis*, 97 F.3d at 1186; *Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir. 1987). Here, because California's common law trust fund doctrine imposes "true fiduciary responsibilities" prior to "the act of wrongdoing and not as a result of the act of wrongdoing," *In re Pedrazzini*, 644 F.2d at 758, 758 n.2, the "express or technical" trust requirement for nondischargeability is satisfied.

Our recent decision in *Double Bogey, L.P. v. Enea*, 794 F.3d 1047 (9th Cir. 2015), is not to the contrary. Although we suggested in dicta in *Double Bogey* that "[c]ommon-law doctrines . . . rarely impose the trust-like obligations sufficient to create a fiduciary relationship under Section 523(a)(4)," *id.* at 1051, we did not foreclose the possibility of common law doctrines from *ever* satisfying § 523(a)(4). To the extent that *Double Bogey* could be read to indicate that common law doctrines must heighten preexisting statutory duties in order to satisfy § 523(a)(4), *see id.*, we do not interpret our discussion there as creating such a general

6

requirement.   Although the cases cited in *Double Bogey*—*Ragsdale*, *In re Lewis*,

and *In re Short*—all referenced state statutes, each of those cases located the

necessary trust relationship in case law, not in statutory law.   Those cases all

arrived at their holdings that a § 523(a)(4) trust obligation existed *in spite of* the

lack of statutory law creating the necessary fiduciary relationship—basing their

determinations instead on the state common law of partnership.   *See, e.g.*,

*Ragsdale*, 780 F.2d at 796 (rejecting the argument that California statutes created a

trust sufficient for § 523(a)(4), but then finding § 523(a)(4) satisfied because

"California courts . . . have raised the duties of partners beyond those required by

the literal wording of [the statute]").[6]   These cases give no reason, and *Double*

*Bogey* suggests none, for tethering the meaning of "fiduciary" under § 523(a)(4) to

state statutory law that itself cannot satisfy that provision's requirements.   We

therefore read the language from *Double Bogey* as saying nothing more than cases

like *In re Pedrazzini*, *Ragsdale*, and *In re Hemmeter* have long held—that for a

fiduciary relationship to satisfy § 523(a)(4), it must exhibit characteristics of a

---

[6] Although *In re Short* stated that "the Washington statute and case law make clear that Short was a fiduciary within the meaning of section 523(a)(4)," 818 F.2d at 695, the Washington statute was "identical" to the California statute at issue in *Ragsdale*—which we found to be a trust ex maleficio and thus outside of § 523(a)(4)'s purview.   *Ragsdale*, 780 F.2d at 796.   As in *Ragsdale*, it was only state common law that gave rise to the requisite fiduciary relationship in *In re Short*.   *See* 818 F.2d at 695.   Thus, whatever statutory duties existed under Washington law were insufficient to support our ultimate holding.

traditional trust relationship and must arise prior to the wrongdoing at issue. *See In re Pedrazzini*, 644 F.2d at 758-59, 758 n.2; *Ragsdale*, 780 F.2d at 796; *In re Hemmeter*, 242 F.3d at 1189-90.

Our conclusion in this regard is consistent with the vast majority of prior bankruptcy court decisions, which have held that duties created by the trust fund doctrine create a fiduciary relationship sufficient to trigger nondischargeability under to § 523(a)(4). *See, e.g., Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28-29 (BAP 9th Cir. 2009); *Nahman v. Jacks (In re Jacks)*, 266 B.R. 728, 737 (BAP 9th Cir. 2001); *Flegel v. Burt & Assocs., P.C. (In re Kallmeyer)*, 242 B.R. 492, 496 (BAP 9th Cir. 1999) (addressing Oregon's parallel trust fund doctrine).

We have reviewed Houng's arguments to the contrary and find them unpersuasive.

AFFIRMED.