NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1148-TaFKu |
| PETER EMANUEL KVASSAY, | Bk. No. 2:12-bk-40267-BR |
| Debtor. | Adv. No. 2:16-ap-01499-BR |
| PETER EMANUEL KVASSAY, | |
| Appellant, | |
| v. | MEMORANDUM* |
| ROBERT V. KVASSAY, Individually and as Trustee of the Kvassay Family Trust dated February 26, 1993, | |
| Appellee. | |
| In re: | BAP No. CC-18-1149-TaFKu |
| RICHARD STEPHEN KVASSAY, | Bk. No. 2:11-bk-11698-BR |
| Debtor. | Adv. No. 2:16-ap-01502-BR |

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

RICHARD STEPHEN KVASSAY,

Appellant,

v.

ROBERT V. KVASSAY, Individually and as Trustee of the Kvassay Family Trust dated February 26, 1993,

Appellee.

Argued and Submitted on January 24, 2019
at Pasadena, California

Filed – February 11, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

———

Appearances:    Troy A. Stewart argued for appellants Peter Emanuel
Kvassay and Richard Stephen Kvassay; Matthew A.
Lesnick of Lesnick Prince LLP argued for appellee Robert
V. Kvassay.

———

Before: TAYLOR, FARIS, and KURTZ, Bankruptcy Judges.

2

# INTRODUCTION

This appeal is another salvo in a long-running battle between debtor-appellees, Richard Kvassay and Peter Kvassay, and their brother, Robert Kvassay.[1] In 2007, Robert became trustee of the estate-planning trust established by their deceased parents. In that role, he oversaw liquidation of the trust's primary asset, the family home place in Eagle Rock, California (the "Property").

Cooperation between the brothers in this endeavor was fleeting; disputes arose, and litigation followed. Robert eventually ousted his brothers from the Property and recently sold it for more than $5,000,000. The brothers' internecine litigation led to delay, a mountain of costs for the trust and for Robert, and claims by the trust against both Richard and Peter, who eventually filed bankruptcy and obtained chapter 7[2] discharges.

Years later, Richard and Peter each filed an adversary proceeding seeking a determination that the debts they owed Robert, individually and as trustee, were discharged in their bankruptcies; they also sought an injunction prohibiting surcharge of their interests in the trust and

---

[1] For the sake of clarity, we refer to the brothers by their first names. No disrespect is intended.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

declaratory relief so stating.

On summary judgment motions filed by Peter and Richard, the bankruptcy court determined that the debts were discharged to the extent of their personal liability. On Robert's summary judgment motions, the bankruptcy court clarified that the discharge injunction did not prohibit Robert, as trustee, from administering the trust, paying himself and others for costs incurred in trust administration, and utilizing recoupment, if appropriate, in his division and distribution of trust assets.

On appeal, Richard and Peter primarily raise non-meritorious preclusion and jurisdictional arguments and fail to argue that the bankruptcy court otherwise erred in granting Robert's summary judgment motions.[3] On de novo review, we AFFIRM.

**FACTS**

**The Kvassay Family Trust.** Robert, Peter, and Richard are brothers and the residual beneficiaries of the Kvassay Family Trust Dated February 26, 1993 (the "Trust"). Robert has served as trustee of the Trust (the "Trustee") since 2007. The Trust corpus consisted of the Property, a three and a half acre residential estate.

The controlling Trust document, the Declaration of Trust dated

---

[3] We issue a combined disposition because the nonprocedural facts are the same; Richard and Peter employed the same attorney; and, with the exception of a single issue asserted only by Peter, they submitted virtually identical briefs in their appeals.

4

February 26, 1993 (the "Declaration"), among other things, gives the Trustee absolute discretion in connection with: (1) the sale, use, and maintenance of the Property; (2) initiation and defense of trust-related litigation; (3) employment of counsel for the trust; and (4) payment of all trust-related expenses including legal fees and costs. It further allows the Trustee discretion to borrow money for trust purposes and requires allocation of receipts and expenditures "in the manner provided by the Reserved Uniform Principal and Income Act in effect on the date f [sic] this Declaration in the State of California." In short, the general terms of the Declaration appear typical for a California family trust.

The Declaration also details distribution of the Trust estate after the death of both trustors. It states that the entire Trust estate, net of appropriate costs of Trust administration, is to be paid in specified amounts to Robert's wife and three children and then: "[t]he rest, residue and remainder of [the Trust] estate shall be distributed by the Trustee to each of our children share and share alike, said children being Peter Emanuel Kvassay, Robert Victor Kvassay and Richard Steven Kvassay." Put differently, the Declaration provides that the brothers are residual beneficiaries and are entitled to receive whatever remains in the Trust after payment of Trust debts, Trust administration expenses, and specific bequests.

**Robert becomes Trustee and administers the Trust.** After both

parents died, Peter briefly served as Trustee. But in January 2007, Robert replaced Peter; he continues to serve as Trustee.

Trust administration has not proceeded either expeditiously or amicably—the Trust is now administered under the supervision of the Los Angeles County Superior Court. In particular, Richard and Peter were long-term residents and poor caretakers of the Property; during their residency, the buildings fell into a state of exceptional disrepair and the acreage was covered with debris and waste. While they initially cooperated with Robert's attempts to remedy the situation, the era of good feeling was a short one. Litigation ensued.

Eventually, the Trust obtained an order evicting Richard and Peter, and the state court awarded Robert, as Trustee, $196,660 in damages for the lost value of the Property's use. The Court of Appeal affirmed and allowed Robert, as Trustee, to keep the $196,660 bond that a third party posted for Richard and Peter.

The Trust's efforts to sell the Property, thus, were complicated by its physical condition as well as the Trust's lack of liquidity. Robert cleaned, repaired, renovated, and improved the Property with his own funds.

The Trust also confronted significant and unexpected encumbrances because in June of 2007 Richard and Peter obtained a $1,500,000 loan secured by a deed of trust against the Property. Robert had no knowledge of the loan until default was imminent. This forced him to refinance the

debt and to service the Trust's loan obligations with his own money.

Eventually, the state court concluded that $973,520 of the $1,500,000 was *not* used for the Trust's benefit and authorized joint and several surcharge against Peter and Richard's distributive Trust shares. Put another way, the state court found, in effect: (1) that Peter and Richard had received a Trust distribution, albeit improperly, in this amount; and (2) that the Trust could either recover the distribution through typical collection activity or surcharge of Peter and Richard's interest in the Trust during the course of Trust administration. The Court of Appeal affirmed this determination.

In October 2010, Robert, as Trustee, filed an accounting petition to approve his acts and transactions and to reimburse himself for payments made to benefit the Trust. The state court approved the expenses. The Court of Appeal affirmed. Robert, as Trustee, later filed a second accounting petition.

In January 2018, the Trust sold the Property for $5,250,000, resulting in net proceeds of $3,378,000.

**Richard and Peter file bankruptcy.** Richard filed a chapter 11 petition in 2011; it was later converted to chapter 7. Peter filed a chapter 7 petition in 2012.

The Trust obtained stay relief orders in both cases allowing continuation of probate court litigation and enforcement of any judgment.

It also filed a nondischargeability adversary proceeding against Peter. After trial, the bankruptcy court entered a judgment finding that, although Peter committed a felonious taking and damaged the Trust by $973,520, the Trust did not make the appropriate intent showing under § 523(a)(4).

Richard and Peter received their chapter 7 discharges in 2013.

**Richard and Peter file adversary proceedings.** In November 2016, Richard and Peter filed separate complaints against Robert, in his individual capacity and as Trustee, to determine the dischargeability of various debts and to obtain injunctive and declaratory relief. In particular, they identified the various state court judgments that Robert, individually and as Trustee, obtained against them (concerning, for example, the loan proceeds and the evictions), alleged that the underlying claims arose prepetition, and asserted that they were discharged. On their declaratory relief claim, they sought an affirmative declaration that the various judgments and claims were discharged. On their injunctive relief claim, they sought to bar Robert, as Trustee, from surcharging their beneficial interest in the Trust and paying administrative expenses of the Trust.

Richard and Peter later filed partial summary judgment motions. The bankruptcy judge reached the obviously correct conclusion that prepetition claims that sought to impose personal liability were discharged. The related orders (the "MSA Orders") declared the debts discharged and the judgments void.

Shortly thereafter, Richard and Peter indicated in pre-trial statements that there were three claims that needed to be resolved at trial; the bankruptcy court set trial for December 4, 2017.

Robert, individually and as Trustee, then sought clarification that the MSA Orders concerned only Richard and Peter's personal liability and did not affect Trust administration and filed motions seeking amendment of the MSA Orders. The bankruptcy court denied the motions. An appeal of the MSA Orders and the orders denying the reconsideration motions followed.

The bankruptcy court then vacated the trial date and set a continued status conference. Before the next status conference, however, the bankruptcy court reassigned the case from Judge Saltzman to Judge Russell.

Given developments on appeal, Robert, individually and as Trustee, filed motions for Civil Rule 54(b) certifications. At the related hearing, the parties and bankruptcy judge discussed, at length, the case and the issues. The hearing concluded with the bankruptcy judge denying the Civil Rule 54(b) motions and inviting Robert to file a motion for summary judgment.

So in March 2018, Robert, individually and as Trustee, filed his motions for summary judgment and proposed statements of uncontroverted facts and conclusions of law. Richard and Peter opposed. After a hearing and after the BAP dismissed the earlier appeals for lack of

jurisdiction, the bankruptcy court entered in each case: an order granting the motion for summary judgment; findings of fact and conclusions of law (the "FF&CL"); and a judgment (the "MSJ Judgments").

In its findings of fact and conclusions of law, the bankruptcy court explained that the MSA Orders confirmed that certain debts were discharged as against Richard and Peter personally while the MSJ Judgments addressed the scope and effect of the discharge. In particular, the MSJ Judgments declared that:

- The discharge does not prohibit Robert, as Trustee, from paying Trust administrative expenses (including attorneys' fees and Trustee fees) from Trust assets.

- The discharge does not prohibit Robert, individually, from seeking and receiving trustee fees for his services as Trustee.

- The discharge does not prohibit Robert, individually, from seeking and receiving reimbursement from the Trust for Trust administrative expenses that he paid personally.

- The discharge does not prohibit Robert, individually and as Trustee, from pursuing postpetition claims.

- The discharge does not bar recoupment, and the Trust's damage claims against Peter or Richard can be recouped from their residual Trust interest.

- The discharge does not prohibit Robert, as Trustee, from retaining

funds received from non-debtors in Trust-related litigation, including the proceeds of the $192,660 bond.

Richard and Peter timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

At oral argument, Richard and Peter suggested that the claims identified in their August 2017 pre-trial statement remained unresolved. If true, the judgment would not be final, and we would lack jurisdiction. Here, however, finality is present.

Because these appeals concern adversary proceedings, we apply traditional 28 U.S.C. § 1291 finality principles. *Belli v. Temkin (In re Belli)*, 268 B.R. 851, 855 (9th Cir. BAP 2001). Under those principles, a ruling is final if it: "(1) is a full adjudication of the issues, and (2) clearly evidences the judge's intention that it be the court's final act in the matter." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1258 (9th Cir. 2004).

Here, the bankruptcy judge clearly intended the MSJ Judgments to be the court's final act in the matter. *See* Hr'g Tr. (Apr. 24, 2018) 30:20–23 (indicating that the court would "absolutely" issue a final, appealable order), 32:11–13 ("So this is interesting. We'll find out what the higher courts have to say about it. That's our system and I'm satisfied with it.").

Further, the MSA Orders and the MSJ Judgments fully adjudicated all

issues in the complaint. The complaint sought three things: first, a determination that debts were discharged; second, injunctive relief; and third, declaratory relief. In the MSA Orders, the bankruptcy court determined that debts were discharged and provided the accompanying declaratory relief; in the MSJ Judgments, the bankruptcy court concluded that the requested injunctive relief was not warranted.

In their August 2017 status report, Richard and Peter identified the following outstanding issues: whether a $360,272 judgment was discharged and void; whether a $198,493.27 attorneys' fees claim was discharged; and whether a $17,598.97 attorneys' fees claim was discharged.

We acknowledge that the MSA Orders and MSJ Judgments did not always isolate the precise judgment amounts; but the bankruptcy court did not need to do so to fully adjudicate the issues. And Richard and Peter did not precisely identify them either.

In the complaint, Richard and Peter identified two judgments, one for $360,272 and one for $212,500, associated with what they called the "Working Plan." In the MSA Orders, the bankruptcy court concluded that a $212,500 judgment and a $187,200 claim associated with the "Working Plan" were discharged because the Working Plan claims arose prepetition. Richard and Peter do not explain how or why the $360,272 judgment is any different.

As for the attorneys' fees claims, we find no reference in the

complaint to a $198,493.27 claim. The complaint describes the $17,598.97 claim as associated with Robert, as Trustee, seeking probate court approval of his attorney's fees and confirming his right to "surcharge" those fees against Richard and Peter's trust interest. In the MSJ Judgments, the bankruptcy court concluded that the discharge did not prohibit Robert, as Trustee, from seeking probate court approval of attorneys' fees.

In sum, through the MSA Orders and the MSJ Judgments the bankruptcy court: determined that Richard and Peter received a discharge of their personal liability on various claims and that the discharge injunction prohibits Robert, individually and as Trustee, from pursuing them personally; and also concluded that the discharge injunction did not prohibit Robert, individually or as Trustee as appropriate, from administering the Trust, collecting obligations owed by the Trust from Trust assets, or seeking recoupment consistent with the Declaration against the residual interests of Peter and Richard. Thus, all causes of action in the complaint are adjudicated.

As a result, the MSJ Judgments are final, and we have jurisdiction.

## ISSUE

Did the bankruptcy court err when it granted Robert's motions for summary judgment?

## STANDARD OF REVIEW

We review the bankruptcy court's grant or denial of summary

13

judgment de novo. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). And we may affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected, or even considered that ground. *Id.*

## DISCUSSION

Richard and Peter focus their appellate arguments on the proposition that, for one reason or the other, the bankruptcy court was not allowed to decide Robert's summary judgment motions. They are wrong.

Preliminarily, one common thread running through their arguments is the assumption that the MSA Orders and the MSJ Judgments concern the same issues. That, too, is wrong. The MSA Orders state that various claims were discharged and that various judgments are, as a result, void under § 524(a)(1)—the MSA Orders concerned Richard and Peter's personal (i.e., *in personam*) liability for the claims. By contrast, the MSJ Judgments address the discharge injunction's effect concerning: first, Robert's ability, individually and as trustee, to seek payment *from* the Trust (and not personally from Richard or Peter); second, his or the Trust's ability to recover claims against Richard and Peter arising postpetition; and third, his or the Trust's ability to seek recoupment. As the bankruptcy judge succinctly put it at the hearing: "And so . . . the discharge . . . eliminate[s] the personal liability but it does not prevent the Trustee from going after

14

the trust assets . . . ." Hr'g Tr. (Apr. 24, 2018) 21:19–22.[4]

**A.    The bankruptcy court correctly granted summary judgment.**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (applied in adversary proceedings by Rule 7056). The bankruptcy court "views the evidence in the light most favorable to the non-moving party" and "draws all justifiable inferences in favor of the non-moving party." *Fresno Motors, LLC*, 771 F.3d at 1125 (citing *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Id.*

In their opening briefs, Richard and Peter never argue that the

_____

[4] Later, the bankruptcy judge explained in more depth:

So to summarize, it is clear to me that the discharge of the debtors [] did not in any way affect the ability of the Trustee to deal with the assets that is with the [*res*], that is the trust, dealing with the obligation of the trust itself. And then if there's anything left over to deal with the -- with the Probate Court from assessing that property. Not as a personal liability. There's nothing in here that I've said that in any way violates the discharge because nothing -- they are not being [held] personal[ly] responsib[le]. It's only the trust and any benefit to the trust.

Hr'g Tr. (Apr. 24, 2018) 22:20–23:5.

underlying legal decision was wrong, so we deem any argument to the contrary waived or forfeited. *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("The usual rule is that arguments raised for the first time on appeal or omitted from the opening brief are deemed forfeited."); *McKay v. Ingleson*, 558 F.3d 888, 891 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived."). We nonetheless review summary judgment de novo. We find no error in the bankruptcy court's decision.

A chapter 7 discharge "discharges the debtor from all debts that arose" prepetition. 11 U.S.C. § 727(b). A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor . . . .*" 11 U.S.C. § 524(a)(2) (emphasis added). The discharge concerns a debtor's *personal* liability on prepetition claims. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."). So the bankruptcy court correctly concluded that Peter and Richard's discharges prevented Robert, individually and as Trustee, from pursuing them *personally* for prepetition but not postpetition claims.

The bankruptcy court also concluded that the discharge did not

prohibit Robert, as Trustee, from paying Trust expenses from Trust assets or Robert, individually, from seeking reimbursement from the Trust and from receiving Trustee fees. This, too, was correct. When Peter and Richard filed bankruptcy, each claimed a beneficial interest in the Trust. But this beneficial trust interest is subject to the terms of the Declaration. As a result, if the Declaration allows use of Trust assets to pay Trustee or administrative fees or to reimburse Robert, individually or as Trustee, the Trust has not violated the discharge injunction simply because Richard and Peter's expectancy is lessened.[5] They, after all, had just that: an expectancy—both Richard and Peter listed an "undetermined contingent" "Trust Beneficial Interest in Real Property" on their Schedule B.

Next, the bankruptcy court concluded that the discharge did not prohibit Robert, as Trustee, from seeking to recover from third parties or from retaining funds received from third parties. This was unquestionably correct. The discharge does "not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

The bankruptcy court also concluded that the discharge does not

---

[5] Hypothetically: say the Trust documents dictate that the Trust assets are, in the final event, to be distributed equally to the three brothers; in addition, say the Trust held assets worth $66 when Richard or Peter filed bankruptcy. Each might assume that he is entitled to $22. They then receive their discharge. The Trust appropriately incurs expenses, is later administered, and Richard and Peter receive $10. Neither the Trust nor the Trustee violated the discharge injunction because Richard and Peter receive $12 less than they *expected*.

prohibit Robert, individually or as Trustee, from recouping Richard or Peter's obligations to the Trust from their share of the residue, if any, of the Trust:

> Debtor's discharge does not prohibit Defendants from recouping any obligations of Debtor to Defendants (including, without limitation, the sums of money for which Debtor was already determined to be liable in the August 5, 2015 opinion issued by the Court of Appeal of the State of California, Second Appellate District, Division Two, in case number B250855) from Debtor's share of the residue, if any, of the Trust, to the extent those obligations arose out of Debtor's acts that caused damage to the Trust. The Debtor's acts that caused damage to the Trust, and the Trustee's administration of the Trust, involve the "same transaction" for purposes of the recoupment doctrine. Any money that Debtor may have a claim to as a residual beneficiary of the Trust, and any damage that the Debtor caused to the Trust, are debts arising from the same transaction, and Defendants may recoup those damages from Debtor's residual interest in the Trust, if any. The discharge injunction does not prevent Defendants from recouping from Debtor's share of the residue of the Trust, if any, an amount equal to the damage caused to the Trust by Debtor, regardless of whether such damage, as determined in any State Court proceedings, was caused prepetition or postpetition. Such action does not seek to hold Debtor personally liable for a prepetition debt.

FF&CL at 11. This was correct.

Recoupment is an equitable doctrine used to abate or reduce claims. *Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 882 (9th Cir. 2008); *see also Newbery Corp v. Fireman's Fund Ins. Co.*, 95 F.3d 1392 (9th Cir. 1996);

18

*Oregon v. Harmon (In re Harmon)*, 188 B.R. 421, 424 (9th Cir. BAP 1995). If two debts arise out of the same transaction, recoupment allows one claimant to reduce the amount demanded by the other claimant by the amount of its own claim. *In re Straightline Invs., Inc.*, 525 F.3d at 882.

To determine if claims arose out of the same transaction, the Ninth Circuit asks if there is a "logical relationship" between the two claims (or events). *Sims v. U.S. Dep't of Health & Human Servs. (In re TLC Hosps., Inc.)*, 224 F.3d 1008, 1012 (9th Cir. 2000). A transaction, thus, "may include a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* (internal quotation marks omitted).

Since recoupment is equitable, the bankruptcy court's use of it is permissive and reviewed for an abuse of discretion. *In re Straightline Invs., Inc.*, 525 F.3d at 882.

We agree that recoupment (or surcharge) is available here and Richard and Peter do not argue to the contrary. They damaged the Trust and thus owe it a debt; but they also have a claim as a residual beneficiary of the Trust. The bankruptcy court found, and we agree, that these debts have a logical relationship and thus arise from the same transaction. As a result, recoupment is appropriate. And since "recoupment is neither a claim nor a debt, it is unaffected by either the automatic stay or the debtor's discharge." *Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R.

749, 754 (9th Cir. BAP 2001). So the bankruptcy court correctly concluded that, if the obligations are subject to recoupment, then the discharge does not prohibit employing it.

We pause, however, to emphasize that we (and the bankruptcy court) are *not* determining that recoupment is appropriate under the Declaration or the facts of this case or that any particular expense of Trust administration or reimbursement from the Trust is appropriate—that is for the Superior Court to decide. Instead, we determine only that the bankruptcy court correctly determined that Richard and Peter's bankruptcy discharge does not prohibit Robert, as Trustee or individually, from seeking payment or reimbursement from the Trust or from utilizing recoupment if appropriate to distribute Trust assets in a manner appropriate under the Declaration.

Having concluded that the bankruptcy court's substantive legal conclusion and grant of summary judgment were correct, we now turn to Richard and Peter's individual arguments; they teeter on the edge of frivolity.

## B. The bankruptcy court had jurisdiction to enter the MSJ Judgments.

**The MSJ Judgments are not advisory opinions.** "Article III of the Constitution restricts the power of federal courts to 'Cases' and 'Controversies.'" *Chafin v. Chafin*, 568 U.S. 165, 171 (2013). So a litigant must

"have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* at 172 (internal quotation marks omitted). Thus, federal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts. *Id.*

Richard and Peter suggest that the MSJ Judgments are an impermissible advisory opinion because they concern the "prospective effect" of the discharge injunction. We disagree. They filed complaints alleging that debts were discharged and that Robert, as Trustee or individually, was actively seeking to enforce those debts; they, correspondingly, requested an injunction prohibiting Robert, as Trustee, from surcharging those debts against their "beneficial interest" in the Trust. Accordingly, we conclude that the MSJ Judgments, which spoke to these matters, were not advisory opinions. They did not address the applicability of a hypothetical discharge injunction to a hypothetical state of facts. Rather, they addressed the applicability of Richard and Peter's specific discharge to specific acts.

**The bankruptcy court had subject-matter jurisdiction to interpret the discharge injunction.** "Bankruptcy courts have subject matter jurisdiction over proceedings 'arising under title 11, or arising in or related to cases under title 11.'" *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re*

21

*Wilshire Courtyard)*, 729 F.3d 1279, 1285 (9th Cir. 2013) (quoting 28 U.S.C.
§ 1334(b)). Proceedings "arising under" title 11 involve causes of action
created or determined by a statutory provision of title 11. *Id.* Here, the
discharge is provided for by § 524. So the bankruptcy court had *arising
under* subject-matter jurisdiction because it was interpreting the discharge.
As a result, Richard and Peter's arguments about *related to* jurisdiction are
misplaced.[6]

Richard and Peter also contend that the bankruptcy court lacked
subject-matter jurisdiction because the MSJ Judgments concern the Trust's
internal affairs (i.e., they argue that part of the relief provided pertains to
Robert's duties as trustee or claims he may have individually or as Trustee
against the Trust or other non-debtors). But our review of the MSJ
Judgments reveals that they were carefully crafted to avoid intruding on
the administration of the Trust in the probate proceeding. Each paragraph
involves the bankruptcy court interpreting the discharge injunction and
stating that it does not prohibit something. More to the point, none of the
paragraphs state that Robert's particular actions, whether as Trustee or
individually, *are legally permissible*—they simply state that the actions are
not prohibited by the *discharge*.

**The bankruptcy court had complete jurisdiction over the adversary**

---

[6] Richard and Peter complain about the portion of the MSJ Judgments stating that
the discharge does not apply to postpetition debts.

**proceedings when it entered the judgments.** Typically, the filing of a notice of appeal divests the trial court of jurisdiction and transfers it to the appellate court. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). That said, "it is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case." *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982). This is because the filing of a notice of interlocutory appeal divests the trial court of jurisdiction only over the particular issues involved in that appeal. *Santa Monica Baykeeper*, 254 F.3d at 886.

Here, the MSA Orders and the MSJ Judgments concern different issues; so the appeal from the MSA Orders did not divest the bankruptcy court of jurisdiction to consider and decide the MSJ Judgments. And, in any event, the BAP dismissed the appeals from the MSA Orders and related reconsideration requests for lack of jurisdiction because the orders were interlocutory on April 27, 2018. So the bankruptcy court had jurisdiction over all aspects of the adversary proceedings at that point. It did not enter or decide the MSJ Judgments until May 31, 2018, a full month later. As a result, Richard and Peter's argument that the appeals divested the bankruptcy court of jurisdiction to consider the motions for summary

23

judgment is wrong.[7]

## C. The bankruptcy court was able to enter the MSJ Judgments.

Richard and Peter highlight various obstacles that they think prevented the bankruptcy court from issuing a decision on the MSJ Judgments. None have merit.

**Law of the case did not bind the bankruptcy court.** Richard and Peter argue that the MSA Orders and the order denying the reconsideration motion were law of the case and prevented the bankruptcy court from deciding the summary judgment motions. Their conclusion flows from their false assumption that those orders are final, non-appealable orders.

To start, we have already explained how the MSA Orders and MSJ Judgments concern different issues. The law of the case doctrine, then, would not apply.

More to the point, however, the bankruptcy court was not bound by law of the case. First, the law of the case doctrine does not mean that every issue previously decided may never be revisited. To the contrary, while courts are generally urged to adhere to this doctrine, it is not an inexorable command. *Id.* at 888. Put differently, "the doctrine 'is discretionary, not

---

[7] They also argue that Robert is judicially estopped from claiming that the bankruptcy court had jurisdiction. This argument is inapposite. Only Congress can give a federal court subject-matter jurisdiction. The parties' actions, failures to act, statements, or misstatements cannot create subject-matter jurisdiction.

mandatory' and is in no way 'a limit on [a court's] power.'" *Id.* (alterations in original) (quoting *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986)).

Second, the MSA Orders and the order denying reconsideration were interlocutory orders. As a result, the bankruptcy court had discretion to reconsider them. *Id.* at 885 ("The general rule regarding the power of a district court to rescind an interlocutory order is as follows: 'As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind*, or modify an interlocutory order for cause seen by it to be sufficient.'") (emphasis in original) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)); *see also* Fed. R. Civ. P. 54(b); Fed. R. Bankr. P. 7054(a) (applying Civil Rule 54(b) in adversary proceedings).

Indeed, a bankruptcy court always has the authority, as a court of equity, to reconsider, modify or vacate its previous orders so long as no intervening rights have become vested in reliance on the orders. *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 940 (9th Cir. 2007). Neither Richard nor Peter point to any such intervening reliance, and we can discern none.

**Collateral estoppel did not prevent the bankruptcy court from granting summary judgment in Peter's case.** In an argument unique to his appeal, Peter argues that the nondischargeability judgment in his favor and

collateral estoppel prevented the bankruptcy court from deciding the MSJ Judgments. This makes little sense.

First, Peter never argued to the bankruptcy court that collateral estoppel applied. This works a forfeiture. *Orr*, 884 F.3d at 932.

Second, Peter's failure to discuss issue preclusion with the bankruptcy court is particularly problematic because, although we review de novo a bankruptcy court's determination that issue preclusion is available, we review the *application* of issue preclusion for an abuse of discretion. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). It is a matter left to the bankruptcy court's discretion. *Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 107–08 (9th Cir. BAP 2007) ("The discretionary aspect of issue preclusion is settled as a matter of federal law."). As a result, it did not "preclude" the bankruptcy court from entering summary judgment. In any event, we "are not in a position to be able to make the discretionary determination" in the first instance on appeal. *Id.* at 108.

Third, for issue preclusion to apply, the issue to be decided in the second proceeding must be the same as the issue that was decided in the first proceeding. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). As already discussed, whether Peter's discharge injunction prohibits Robert's particular actions, individually or as Trustee, is not the same issue as whether Peter's obligations to the Trust were discharged. As a result,

26

issue preclusion is not applicable and did not "preclude" the bankruptcy court from granting summary judgment.

**The bankruptcy court's establishment of trial dates did not prevent it from granting summary judgment.** Richard and Peter argue that, by setting the matter for trial, the bankruptcy court determined there were genuine issues for trial. They contend that this means the bankruptcy court could not grant the summary judgment motions. We disagree.

The bankruptcy court's setting of trial dates does not work a final determination that there are genuine issues for trial. And even if the bankruptcy court *had* so determined, it had the discretion and ability to reconsider that decision; it was not bound by its previous, interlocutory decisions. In any event, the bankruptcy court, after first setting the matters for trial, subsequently vacated the trial dates and set the matters for continued status. It has the inherent authority to manage its own calendar, and the decision to consider a summary judgment motion before trial is not a basis for reversal.

**The MSJ Judgments do not exceed the scope of the pleadings.** Richard and Peter contend that the MSJ Judgments exceeded the scope of the adversary proceedings' pleadings because they are phrased in the negative (i.e., what the discharge does not prohibit) while they sought affirmative relief (i.e., what discharge does prohibit). This is sophistry.

Their complaints sought issuance of an injunction prohibiting Robert,

individually and as Trustee, from collecting discharged debts and declaratory relief so stating. In the final event, the bankruptcy court agreed that the debts were discharged, declined to issue an injunction prohibiting Robert, individually or as Trustee, from recouping those debts from the Trust, and provided declaratory relief so stating. These determinations were within the scope of the pleadings. Put simply, Richard and Peter cannot plausibly argue that a determination that the "discharge does not prohibit" a particular act exceeds the pleadings when they sought an injunction and determination that the discharge *did* prohibit particular acts.

As the bankruptcy court correctly put it in the findings of fact and conclusions of law: "The Complaint's Second Cause of Action seeks a broad injunction to prevent Robert from trying to recover these fees and costs in the Probate Court . . . . [The] Complaint has put the scope of the discharge injunction at issue in this proceeding." FF&CL at 7.

**The adversary pleadings invited the bankruptcy court to address the discharge injunction by adversary complaint.** Richard and Peter argue that issues concerning the scope of the discharge injunction can only be raised and resolved through a contested matter. But, as just noted, they filed the adversary proceedings and sought the associated relief. Having invited the bankruptcy court to address these matters in adversary proceedings, they cannot now complain on review that this is an error. *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1336 (9th Cir. 1985)

28

("[O]ne may not complain on review of errors below for which he is responsible."); *Houng v. Tatung Co., Ltd. (In re Houng)*, 499 B.R. 751, 763 (C.D. Cal. 2013) ("Houng could not, in any event, seek reversal of the bankruptcy court's order on the basis that it applied California preclusion law, since he urged the bankruptcy court to do so in the underlying proceeding."), *aff'd*, 636 F. App'x 396 (9th Cir. 2016).[8] And in any event, they have not shown that any procedural difference between contested matters and adversary proceedings prejudiced them. *See Korneff v. Downer Reg'l Med. Ctr.-Hosp., Inc. (In re Downey Reg'l Med. Ctr.-Hosp., Inc.)*, 441 B.R. 120, 127 (9th Cir. BAP 2010) (citing *Austein v. Schwartz (In re Gerwer)*, 898 F.2d 730, 734 (9th Cir. 1990)).

**Richard and Peter's procedural arguments lack merit.** Richard and Peter raise a few miscellaneous procedural arguments.

First, they contend that the bankruptcy court could not issue findings of fact and conclusions of law because summary judgment involves determining if there is a genuine issue for trial, not weighing evidence or determining truth. This is perplexing. They never, on appeal, argue that there *were* materially disputed facts or genuine issues for trial. So summary

---

[8] *See also Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*, 627 F.3d 376, 386 (9th Cir. 2010); *Kempton v. Clark (In re Clark)*, 662 F. App'x 544, 546 (9th Cir. 2016) ("In addition, under the invited error doctrine, Kempton cannot invite a purported error in the bankruptcy court and then on appeal complain of that very error.").

judgment was proper: the bankruptcy court concluded that there was not a genuine issue of fact for trial. The bankruptcy court's "findings of fact" simply identify the undisputed relevant facts that justified summary judgment

Second, they argue that none of the "uncontroverted facts" were materially relevant to either the dischargeability of debts or the declaratory or injunctive relief. Instead, they assert, the facts concern: the internal affairs of a trust; their residence and eviction from the Property; and claims the bankruptcy court already determined were discharged. Again, they misread the MSJ Judgments; as we have already discussed, they were carefully crafted to speak only about what the discharge injunction did or did not prohibit—they do not opine about the permissibility of Robert's actions, individually or as Trustee, vis-à-vis the Declaration or state law. This misinterpretation similarly affects their read of the relevant facts.

Third, they suggest that the bankruptcy court erred by failing to apply relevant substantive law because it never mentioned § 727(b). But this observation does not amount to an argument either that the bankruptcy court committed legal error or that the bankruptcy court's underlying legal analysis is wrong. To be clear, neither Richard nor Peter argue that the bankruptcy court's recoupment analysis is wrong. We thus treat any argument to the contrary as waived.

**CONCLUSION**

Based on the foregoing, we AFFIRM the bankruptcy court's judgments.